## McCord v. Louisville & Nashville Railroad Company.

(Decided December 12, 1924.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Carriers—Liability for Delay in Furnishing Cars is Based on "Negligence."—Duty of carrier to furnish freight cars promptly is not absolute, and liability for so doing is based on "negligence" or failure to exercise ordinary care or reasonable diligence.

2. Carriers—Burden of Proof Necessary to Excuse Delay in Furnishing Freight Cars Because of Abnormal Operative Conditions, Stated.—In excusing delay in furnishing freight cars burden is on carrier to prove not only existence of abnormal operative conditions, such as could not have been reasonably anticipated and avoided, but also that delay was caused solely by such conditions.

3. Carriers—Evidence Held Insufficient to Excuse Delay in Furnishing Freight Cars.—In action against railroad company for delay in furnishing freight cars, evidence as to number of cars in shop for repairs held insufficient to excuse delay.

4. Carriers—Failure to Show Distribution of Cars was Not Discriminatory, or did Not Cause Delay, Held Fatal to Right to Directed Verdict on Ground of Excuse.—In action against railroad company for delay in furnishing cars, failure to show that distribution of available cars among its several divisions was not discriminatory against division in question, or that delay was not due to any such failure on its part, was fatal to defendant's right to directed verdict on ground that delay was excusable.

5. Carriers—Railroad in Possession and Control of Less than Two-Thirds Cattle Cars, Not Without Fault as Matter of Law for Delay in Furnishing Cars.—In action against railroad company for delay in furnishing cattle cars, though defendant owned sufficient cars where it had in its possession and under its immediate control less than two-thirds number of its cars, defendant was not without fault, as matter of law.

6. Carriers—Railroad Not Excused for Delay in Supplying Cars Because they were Not Returned Promptly Though it Complained to Agent.—Where interstate railroads employed agent to look up and return cars engaged in interstate commerce, fact that defend-

ant's cars were not returned promptly though it had complained to such agent, did not excuse its delay in furnishing·cars to shipper, as it could not shift its responsibilities to its own agent.

7. Carriers—Facts Necessary to Enable Carrier to Avoid Responsibility for Unusual Delay in Furnishing Shipping Facilities, Stated.—To avoid responsibility to shipper for unusual delay in furnishing shipping facilities, carrier must show ownership of sufficient equipment to meet ordinary demands promptly, and lack of negligence in permitting such equipment to be unavailable for such use.

THOMAS C. MAPOTHER for appellant.

WOODWARD & WARFIELD and R. P. HOBSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an action by McCord for damages resulting from delay by the railroad company in furnishing him cars for the shipment of live stock, in October, 1922.

There was proof of damage from such delay, and that the delay was unreasonable under ordinary conditions, but the court directed a verdict for the defendant upon the theory that its proof excused and justified the delay. This proof, in substance, is: That the company owned a sufficient number of cattle cars to meet promptly all ordinary and usual requirements at this and all seasons of the year, but that at this time, and for several months before, it had in its possession and under its control less that two-thirds of the number of such cars owned by it, and that of this number in possession more than one-fifth were unavailable because in its shops for repairs. The situation improved somewhat during the month, but taking October first as fairly illustrative, the company then owned 1,660 cattle cars, had in possession 929 of such cars, including those owned by itself and other carriers, and of this number 215 were in its shops for repairs. So that, while it owned 1,660, it had available for its shippers' use only 714, or considerably less than one-half of the number of such cars it owned and had provided in anticipation of its customers' needs.

The duty of the carrier to furnish such cars promptly is not absolute, and its liability for delay in so doing is based upon negligence or the failure to exercise ordinary care or reasonable diligence in the matter. I. C. R. R. Co. v. River & Rail Coal & Coke Co., 150 Ky. 489, 150 S. W. 641; Pa. R. Co. v. Sonman Shaft Coal Co., 242 U. S. 120.

Where, as here, the delay is shown to have been unreasonable under normal transportation conditions, and the carrier claims justification because of abnormal operative conditions in the transportation business, a matter peculiarly within its knowledge and with which the shipper could not have first-hand information, the burden is clearly upon the carrier to prove not only the existence of such abnormal operative conditions as could not have been reasonably anticipated and avoided by it, but also that the delay was caused solely by such conditions. That the proof of the carrier in this case does not meet either of these requirements seems clear to us. In the first place, it is simply shown that 215 cattle cars were in defendant's shops for repair, with no showing whatever that such a large portion of this essential equipment in that condition was usual or consonant with ordinary care and due diligence.

As it appears probable that this additional number of cars, if available, would have enabled defendant to have supplied plaintiff without delay, or at least with much less delay, it would seem clear defendant did not justify the whole, if any, of the delay.

Then again, it failed to show that its distribution of its available cattle cars among its own several divisions upon which this class of commerce originates was not discriminatory against the particular division involved, one of the largest producers of such business, or that the delay, in whole or in part, was not due to any such failure upon its part, and the absence of such proof was also fatal to a right to a directed verdict.

Finally, we cannot believe the trial court was justified by the proof in holding, as matter of law, that defendant was without fault because, as shown, it had in possession and under its immediate control less than two-thirds the number of cattle cars owned by it, and except for which there was no justification whatever for the delay.

The cars owned by the defendant but out of its possession were shown to be "scattered over the roads of the country" to which they had been sent in interstate commerce.

The question then finally narrows to whether or not a carrier, owning sufficient equipment to take care of commerce originating upon its lines, is excused from delay in meeting such requirements promptly upon proof

simply that its needed equipment is scattered over the roads of the country in interstate commerce.

So far as we are informed, this precise question has not heretofore been considered by this or any other court.

It is conceded that defendant could not have prevented its cattle cars from going to the lines of other carriers in interstate shipments, and the proof shows that its shortage of cars at this time was due to the failure of such other carriers to return same promptly to it, and it is insisted that it is not responsible for such failure.

It also proved, however, that it, with other interstate carriers, employs the American Railway Association to look after the interchange and prompt return to the owner carrier of all freight cars engaged in interstate commerce; that its frequent appeals to this agency for return to it of its cattle cars were unavailing throughout the summer and fall of 1922; that despite these appeals it was short about 40 per cent, roughly speaking, of such equipment owned by it, and about 400 cars short of the number needed to meet its requirements during the month of October.

This amounts to a claim that defendant ought to be excused for failing to meet its customers' demands for cattle cars promptly because the agency selected by it to look after the return of same from other carriers, for some unexplained reason, had not done so. Asked why it could not get its cars back more promptly during this period, Mr. Phelps, defendant's superintendent of transportation, said:

"They were needed more perhaps upon other lines, or roads in possession of the equipment, than they were on the Louisville and Nashville. That is our conclusion and assumption."

In other words, defendant would justify its failure to function efficiently as a common carrier because perhaps its agent employed to look after the prompt return of its equipment from interstate trips was unable to prevent, or had permitted, other carriers by whom it was also employed, to use same to supply their needs, which defendant concludes and assumes were more urgent than its own. That a principal may thus shift his responsibilities and duties to an agent of his own selection, is certainly a novel contention. That it cannot be sustained unless because of some peculiar power vested in such

joint agent, not by the interstate carriers themselves but by law, is clear.

We may assume without deciding that the Interstate Commerce Commission might confer such power upon such a joint agency of interstate carriers by approval of its rules regulating interchange and return of equipment carried in interstate commerce beyond the lines of the owner of such equipment, but even then it would be incumbent upon any such carrier, in order to justify its failure to perform its duties to its patrons, not only to show that it exercised ordinary care and due diligence to get its equipment back through appeals to such joint agent, but also to prove that the failure of other carriers to return the equipment promptly was not due to any negligence upon the part of the joint agent to enforce, or other carriers to observe, the rules approved by the Interstate Commerce Commission with reference to the interchange and return of such equipment.

There is here no proof of approval by the Interstate Commerce Commission of any rules adopted by the carriers or their joint agent, or that the shortage on defendant's line of sufficient cattle cars to meet its demands was not due to negligence upon the part of the joint agent, or wilful wrong by the other carriers employing such agency. For aught that appears in this record, the shortage of cattle cars upon defendant's lines may have been due to the action of the joint agent of the carriers of the country in permitting other carriers to retain defendant's needed equipment upon the theory that such other carriers' needs were more urgent than those of the defendant, and there is no showing whatever that such agency has been clothed with any such power by any lawful authority, and it certainly could not be clothed with that power by the carriers so as to excuse any one of them from performing its duties to its own patrons.

From all that appears here, defendant may have a cause of action against the joint agent, or the carriers who retained its equipment, for a violation of some express agreement between the carriers and the joint agent, or of some rule of the agent, approved by the carriers, to indemnify it for any loss sustained by it because of a wrongful detention of its cars, and if this be true, defendant certainly cannot avoid its primary liability to the plaintiff for his loss thereby occasioned, but must answer

to him and look to its agent or associate carriers responsible to it therefor for recoupment.

We are convinced that to avoid its responsibility to a shipper for unusual delay in furnishing him shipping facilities, the carrier must show, not only ownership of a sufficient equipment to meet ordinary demands promptly, but also that it is without negligence in permitting or suffering its owned and needed equipment to be unavailable for its use, and that this is not done by simply showing detention thereof by other carriers, with proof that appeals to a joint agent of itself and such other carriers for relief were unavailing, as is the case here.

The evidence therefore falls far short, in our judgment, of justifying the admittedly unusual delay upon the ground that such delay resulted solely from abnormal conditions beyond defendant's control, and for which it was not responsible.

Wherefore, the judgment is reversed, and the cause remanded for another trial consistent herewith.